## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALD STEPHENS and** | : | **Civil Action No. 1:14-CV-160** |
| **BONNIE WILSON,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **STATE FARM FIRE AND** | : | |
| **CASUALTY COMPANY,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of The Case

This case involves a dispute relating a homeowners' insurance policy, and began its life as a *pro se* action filed in state court. The initial *pro se* complaint alleged that the plaintiffs, Gerald Stephens and Bonnie Wilson, purchased a homeowners insurance policy for their property located at 1184 Julianne Drive, Hummelstown, Pennsylvania from State Farm, and had fully paid the premiums under this insurance policy at the time of the losses which they alleged took place in 2012. (Doc. 1-1, ¶1.) According to Stephens and Wilson, "[c]laims were made for theft vandalism and water damages, which have been given 3 different claim numbers by State Farm even though they are related to concurrent loss events." (Id.)

Stephens and Wilson stated that they submitted claims to State Farm relating to these losses in October 2012. According to the plaintiffs in January 2013 a State Farm adjuster then "visited the property to view damages to the property and evaluate the claimed losses." (Id., ¶¶3-4.) On or about February 2013, the plaintiffs allege that they hired a public adjuster to settle their claims with State Farm, and in February 2013 State Farm "paid part of the money to the plaintiffs toward partial settlement of the claimed losses but many claimed losses have not been paid for." (Id., ¶¶5-6.)

The initial *pro se* complaint further contended that Stephens and Wilson repeatedly demanded payment of the additional amounts they believe are due, but that State Farm  neglected and refused to pay replacement costs of losses and only paid greatly depreciated values; did not pay for stolen utilities or lost rental income; and acted in bad faith and did not deal fairly with the plaintiffs. (Id., ¶¶7-10.) After setting forth these factual recitals, the initial *pro se* complaint advanced three legal claims: Count I alleged a cause of action for Breach of Contract relating to this insurance policy; Count II asserted a claim for Unjust Enrichment; and Count III sought injunctive relief for Cancellation of Insurance on False Premises. (Id.) With respect to Count II, the Unjust Enrichment claim, the complaint contained a single averment, alleging that if State Farm "is permitted to retain the payments for insurance supplied by Plaintiff, without making payment, [State Farm] will be unjustly enriched in the

amount of the insurance premiums paid and the losses experienced." (Id.)

State Farm timely removed this action from state court, and then filed the instant motion to dismiss on February 6, 2014, (Doc. 4), accompanied by a supporting memorandum of law filed on February 20, 2014. (Doc. 7.) In this motion, State Farm sought to dismiss Count II of the complaint, the unjust enrichment claim, and also requested dismissal of the prayer for injunctive relief.

We recommended that the district court dismiss Count II of the complaint, the unjust enrichment count, (Doc. 10), and on May 5, 2014, the district court entered an order dismissing this count, without prejudice, and remanding the case for further proceedings. (Doc. 13.) The defendant then answered the complaint. (Doc. 14.) A case management conference was held; (Doc. 17), and a case management schedule was set for this litigation. (Doc. 18.) That schedule allowed parties to move to amend their pleadings on or before July 14, 2014. (Id.)

On July 10, 2014, four days prior to the deadline set by the court for amendment of pleadings, the plaintiffs moved to amend their complaint. (Doc. 19.) Along with this motion, the plaintiffs tendered a proposed amended complaint. (Id.) As we read it, that proposed amended complaint sets forth three claims and causes of action. First, the complaint re-states and re-alleges the plaintiffs' breach of insurance contract claim, alleging that State Farm has failed to properly pay all benefits that are

due and owing to the plaintiffs on this homeowner insurance policy. In their prayer for relief on this breach of contract count the plaintiffs seeks compensatory damages, along with punitive damages and attorney's fees. Count II of the proposed amended complaint then brings a statutory bad faith claim relating to the adjustment of the plaintiffs' covered losses under this insurance policy. This claim is brought pursuant to 42 Pa.C.S. §8371, but is advanced in a summary fashion with the plaintiffs simply incorporating by reference their breach of contract allegations and then stating: "Defendant has engaged in bad faith conduct toward Plaintiff and has treated Plaintiff unreasonably and unfairly with respect to adjustment of Plaintiff's covered loss . . . ." (Id., ¶16.)

Finally, the proposed amended complaint sets forth a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-9.2 (hereafter "UTPCPL"). This UTPCPL claim is factually distinct from the claims relating to State Farm's alleged failure to pay under its policy with the plaintiffs and relates to the cancellation of this homeowner insurance policy. According to the well-pleaded facts in the complaint, Plaintiff Stephens, a quadriplegic, notified State Farm, through its agent, that he would have to leave his residence for a period of time for medical treatment and intended to rent the home while his received care for his disabling condition.(Id., ¶¶17-30.) Stephens alleges that

4

he was assured by State Farm's agent that his insurance would remain unaffected by his departure while he sought medical care. (<u>Id</u>.) Despite these affirmative assurances, at the time he submitted claims on the policy, Stephen alleges that State Farm then deceptively and wrongfully relied upon his departure from the residence to cancel his insurance, in violation of UTPCPL. (<u>Id</u>.) State Farm has opposed to this motion to amend, arguing that the plaintiffs' proposed amended complaint is both untimely and futile since the new claims raised by the plaintiffs fail as a matter of law. (Doc. 20.) This motion is now ripe for resolution.

For the reasons set forth below, it is recommended that the motion for leave to amend be granted, in part, and denied, in part.

## II.   <u>DISCUSSION</u>

### A.   <u>Rule 15 Standard of Review</u>

Rule 15 of the Federal Rules of Civil Procedure governs amendments and supplementation of pleadings. Fed. R. Civ. P. 15. Rule 15(a) authorizes a party to amend his pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of the responsive pleading, or 21 days after service of a dispositive motion under Rule 12, whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A) and (B). "In all other cases, a party may amend its pleading only with the opposing party's written consent, or the court's

leave," which courts are to freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2).

Consistent with the plain language of this rule, leave to amend rests in the discretion of the court. That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15. In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion to deny a motion to amend, <u>Bjorgung v. Whitetail Resort, LP</u>, 550 F.3d 263 (3d Cir. 2008); <u>Cureton v. National Collegiate Athletic Ass'n</u>., 252 F.3d 267 (3d Cir. 2001).

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.' <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir.1997) ('<u>Burlington</u>'); <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. <u>Burlington</u>, 114 F.3d at 1434." <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). Moreover, a party seeking to supplement pleadings must act in a diligent fashion. Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them. <u>Rolo v. City Investing Co. Liquidating</u>

Trust, 155 F.3d 644, 654 (3d Cir.1998)." Krantz v. Prudential Investments Fund

Management LLC, 305 F.3d 140, 144 (3d Cir. 2002).

When assessing whether a proposed amended complaint is futile because it fails

to state a claim upon which relief may be granted a court should "begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) In this regard,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of

the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state

a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

8

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

As for considerations of delay, while the issue of delay is relevant to a motion to amend, "[d]elay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, [only] when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of undue delay . . . will 'focus on the movant's reasons for not amending sooner,' Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988)." Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Finally, in every instance, the exercise of this discretion must be guided by the

animating principle behind Rule 15, which is "to make pleadings a means to achieve an orderly and fair administration of justice." <u>Griffin v. County School Bd. of Prince Edward County</u>, 377 U.S. 218, 227 (1964). Therefore, in considering a motion to amend we must always "appl[y] Rule 15 . . . in a manner aimed at securing the just, speedy and inexpensive determination of every action." <u>CMR D.N. Corp. v. City Of Philadelphia</u>, No. 07-1045, 2011 WL 857294, *4 (E.D.Pa. March 11,2011)(Stengel, J.).

### B. <u>This Motion to File an Amended Complaint Should Be Granted, in Part, and Denied, in Part.</u>

Judged against these standards, in this case, it is submitted that, in the proper exercise of the court's discretion, <u>Hassoun v. Cimmino</u>, 126 F.Supp.2d 353, 360-61 (D.N.J.2000), we should grant this motion to amend, in part, and deny the motion in part.

At the outset, we will decline the defendant's invitation to find that the proposed amended complaint is untimely and deny the motion to amend in its entirety. This argument merits only brief consideration. The plaintiffs moved to amend their complaint on July 10, 2014, four days *prior* to the deadline set by the court for amendment of pleadings in our case management order. It cannot be said that the plaintiffs were dilatory when they acted with greater promptness than the court required of them in our scheduling order. Thus, the motion to amend is timely filed.

10

As for the defendant's claims that various aspects of the proposed amended complaint are futile in that the newly asserted claims are subject to summary dismissal, we believe that some, but not all, of these new claims set forth in the proposed amended complaint may be subject to dismissal. Accordingly, we recommend that leave to amend this complaint only be granted in part. At the outset, with respect to the breach of contract claim set forth in the amended complaint, we note that the defendant concedes that the plaintiffs may bring this claim, but argues that the demand for attorney's fees and punitive damages should be stricken from this breach of contract claim.

We agree. It is well settled that " 'punitive damages are not recoverable in an action based solely on breach of contract.' Thorsen v. Iron & Glass Bank, 328 Pa.Super. 135, 476 A.2d 928, 932 (Pa.Super.Ct.1984); Johnson v. Hyundai Motor Am., 698 A.2d 631, 639 (PaSuper.Ct.1997)."Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 402 (3d Cir. 2004). See e.g., Batka v. Liberty Mut. Ins. Co., 486 F. Supp. 582, 583 (E.D. Pa. 1980); Fincke v. Phoenix Mutual Life Insurance Co., 448 F.Supp. 187, 191 (W.D.Pa.1978); Carpel v. Saget Studios, Inc., 326 F.Supp. 1331, 1334 (E.D.Pa.1971). Likewise, under Pennsylvania law attorney's fees are not recoverable in a contract action, absent some explicit fee award provision in the contract itself. See Knecht, Inc. v. United Pac. Ins. Co., 860 F.2d 74, 81 (3d Cir.

11

1988). Therefore, while the breach of contract claim set forth in this amended complaint should be permitted to proceed forward, the punitive damages and attorney's fees demands set forth in the amended complaint's prayer for relief relating to this claim should be stricken.

As for the statutory bad faith denial of insurance coverage claim articulated by the plaintiffs in their proposed amended complaint, Pennsylvania law provides for a cause of action by insurance customers against insurance companies that engage in bad faith claims handling, stating that: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) Award punitive damages against the insurer; (3) Assess court costs and attorney fees against the insurer." 42 Pa. C. S. § 8371.

Under Pennsylvania law, "[b]ad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured. See Coyne v. Allstate Ins. Co., 771 F.Supp. 673, 678 (E.D.Pa.1991) (bad faith is failure to acknowledge or act promptly on the claims, or refusing to pay without reasonable investigation of all available information); Romano v. Nationwide Mut. Fire Ins. Co., 435 Pa.Super. 545, 646 A.2d 1228 (1994)." Frog, Switch & Mfg. Co., Inc. v.

Travelers Ins. Co., 193 F.3d 742, 751 (3d Cir. 1999). "Ultimately, in order to recover on a bad faith claim, the insured must prove: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). Case law sets exacting standards for any bad faith claim. As the court of appeals has observed:

> In the primary case construing bad faith under 42 Pa.C.S.A. § 8371, Terletsky v. Prudential Property & Casualty Co., the Superior Court of Pennsylvania explained:
>
>> "Bad faith" on [the] part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
>
> 437 Pa.Super. 108, 125, 649 A.2d 680, 688 (Pa.Super.Ct.1994) (quoting Black's Law Dictionary 139 (6th ed.1990)). Terletsky held that, "to recover under a claim of bad faith," the insured must show that the insurer "did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim." Id. Thus, an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions. Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir.1995). Our Court has described "the essence of a bad faith claim" as "the unreasonable and intentional (or reckless) denial of benefits." UPMC Health Sys. v. Metro. Life. Ins. Co., 391 F.3d 497, 506 (3d Cir.2004).

Bad faith "must be proven by clear and convincing evidence and not merely insinuated." Terletsky, 649 A.2d at 688 (collecting cases). As the District Court noted, this heightened standard requires the insured to provide evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." Bostick v. ITT Hartford Grp., 56 F.Supp.2d 580, 587 (E.D.Pa.1999) (citations omitted).

Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011).

These same exacting standards apply to assessing the sufficiency of complaints alleging bad faith claims under §8371. When considering whether a proposed statutory bad faith claim under §8371 fails as a matter of law: "Many federal district courts have recently been called upon to evaluate bad faith complaints in light of Iqbal and Twombly. Under these Supreme Court decisions, plaintiffs must plead sufficient facts to make out a plausible claim for relief against the defendant. See Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557). In the bad faith context, district courts have required more than 'conclusory' or 'bare-bones' allegations that an insurance company acted in bad faith by listing a number of generalized accusations without sufficient factual support. See e.g., Liberty Ins. Corp. v. PGT Trucking, Inc., Civ. A. No. 11–151, 2011 WL 2552531, at *4 (W.D.Pa. Jun. 27, 2011); Pfister v. State Farm Fire & Cas. Co., Civ. A. No. 11–799, 2011 WL 3651349 (W.D.Pa. Aug. 18, 2011); Atiyeh, 742 F.Supp.2d at 599 ('However, these averments are merely conclusory legal statements and not factual averments.')." Palmisano v. State Farm

14

Fire & Cas. Co., CIV.A. 12-886, 2012 WL 3595276 (W.D. Pa. Aug. 20, 2012). See

Yohn v. Nationwide Ins. Co., 1:13-CV-024, 2013 WL 2470963 (M.D. Pa. June 7,

2013)(collecting cases). Thus, the assessment of the sufficiency of a particular

complaint often turns on the specificity of the pleadings, and calls for recital of

specific factual allegations from which bad faith may be inferred in order to defeat a

motion to dismiss. Compare  Sypeck v. State Farm Mut. Auto. Ins. Co., 3:12-CV-324,

2012 WL 2239730 (M.D. Pa. June 15, 2012) with Zimmerman v. State Farm Mut.

Auto. Ins. Co., 3:11-CV-1341, 2011 WL 4840956 (M.D. Pa. Oct. 12, 2011). Where

a complaint's §8371 bad faith claim simply relies upon breach of contract allegations,

coupled with a conclusory assertion that the failure to pay under an insurance policy

was "unreasonable" or made in bad faith, courts have dismissed such claims, but

typically have afforded litigants an opportunity to further amend and articulate their

bad faith claims.  See e.g., Wanat v. State Farm Mut., Auto. Ins. Co., 4:13-CV-1366,

2014 WL 220811 (M.D. Pa. Jan. 21, 2014); Cacciavillano v. Nationwide Ins. Co. of

Am., 3:12-CV-530, 2012 WL 2154214 (M.D. Pa. June 13, 2012).

     In this case, as pleaded by the plaintiffs this bad faith claim relates solely to

State Farm's partial payment of the plaintiffs' claims under this policy.[1] As pleaded,

_____

     [1]As pleaded, the plaintiff has not alleged a bad faith claim relating to the
subsequent cancellation of the policy by State Farm. Instead this bad faith claim is
based solely upon plaintiffs' contention that "Defendant has engaged in bad faith

this claim encounters a threshold factual hurdle since the plaintiffs also allege that they received some payments and benefits under the policy, partial payments that seem inconsistent with a claim of complete bad faith on the part of the insurer. Moreover, and more fundamentally, this claim fails as a matter of law since the plaintiffs have simply alleged in a conclusory fashion that the partial payment of this claim breached the contract and that: "Defendant has engaged in bad faith conduct toward Plaintiff and has treated Plaintiff unreasonably and unfairly with respect to adjustment of Plaintiff's covered loss . . . ." (Id., ¶16.) In light of settled case law, such summary allegations are insufficient to state a bad faith claim under §8371 and call for dismissal of this particular claim. However, this dismissal should be without prejudice to allowing leave to further amend this claim if the plaintiffs can, in fact, articulate a further factual basis for this claim of bad faith given the partial payments made under the policy. Wanat v. State Farm Mut., Auto. Ins. Co., 4:13-CV-1366, 2014 WL 220811 (M.D. Pa. Jan. 21, 2014); Cacciavillano v. Nationwide Ins. Co. of Am., 3:12-CV-530, 2012 WL 2154214 (M.D. Pa. June 13, 2012).

Finally, as we have noted, the proposed amended complaint contains a count

---

conduct toward Plaintiff and has treated Plaintiff unreasonably and unfairly *with respect to adjustment of Plaintiff's covered loss . . . .*" (Id., ¶16.)(emphasis added).Therefore we have no occasion to consider whether the cancellation of the policy might independently support a bad faith claim under §8371. See, Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 356 (E.D. Pa. 1997).

under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. This claim relates to what the plaintiffs describe as a deceptive and pretextual cancellation of Mr. Stephens' insurance policy, where it is alleged that Stephens, a quadriplegic, sought and obtained assurances from a State Farm agent that he could leave his home and rent the residence while he sought medical care without losing his insurance, only to have State Farm then cancel the insurance at the time that Stephens made claims upon the policy, ostensibly because Stephens was not residing in the home. (Doc. 19, ¶¶17-30.)[2] The defendant has opposed addition of this claim to the amended complaint, arguing without benefit of any legal citation that these allegations do not state a valid cause of action under UTPCPL.

We disagree. With respect to this particular claim, this court has aptly described the elements of a UTPCPL claim under Pennsylvania law in the following terms:

> The UTPCPL provides, in pertinent part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commence as defined by ... this act are hereby declared unlawful." 73 Pa. Stat. Ann. § 201–3. "[T]he UTPCPL is designed to protect the public from fraud and deceptive business practices." Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 564 (3d Cir.2008). It provides a private cause of action for "[a]ny person who purchases ...

---

[2]We note that defense counsel has also adamantly denied these averments, which the defendant indicates have no basis in fact. We recognize, however, that at this stage our discretion and judgment is cabined by the well-pleaded facts in the amended complaint. The issue of whether the plaintiffs can prove what they allege must wait for another day, and a different proceeding.

goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" due to the seller's unfair or deceptive acts or practices. 73 Pa. Stat. Ann. § 201–9.2(a). "In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir.1995) (citing Gordon v. Pa. Blue Shield, 378 Pa.Super. 256, 548 A.2d 600, 604 (1988)); see also Gardner, 544 F.3d at 564–65.

Zaloga v. Provident Life & Acc. Ins. Co. of Am., 671 F. Supp. 2d 623, 632 (M.D. Pa. 2009).

Therefore, in order "[t]o establish liability under the catch-all provision of the UTPCPL, 'a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss.' Slapikas v. First Am. Title Ins. Co., CIV.A. 06–0084, —— F.R.D. ——, ——, 2014 WL 899355, at *6 (W.D.Pa. Mar. 7, 2014) (citing Seldon v. Home Loan Servs., 647 F.Supp.2d 451, 470 (E.D.Pa.2009); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 223 (3d Cir.2008))." Prukala v. Elle, 3:14-CV-92, 2014 WL 1311125,*3 (M.D. Pa. Mar. 28, 2014).

Viewed against these benchmarks, we conclude that the plaintiffs' amended complaint, judged at this pleading stage, adequately states a UTPCPL cause of action. That amended complaint does not allege a mere failure to pay, or perform, under an

insurance contract, conduct which would not be actionable under UTPCPL. Rather, fairly construed, the amended complaint describes active malfeasance, consisting of lulling assurances from the defendant's agent that the plaintiff, a quadriplegic, may leave and rent his home without adverse insurance consequences, coupled with financially harmful conduct, the cancellation of the policy at the time that Stephens made claims on that policy on the basis of acts that the insurer, through its agent, is alleged to have condoned.

On the face of these pleadings, the facts alleged by the plaintiffs in our view support a UTPCPL claim since these averments describe: "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." Prukala v. Elle, 3:14-CV-92, 2014 WL 1311125,*3 (M.D. Pa. Mar. 28, 2014). Therefore, it is recommended that the plaintiff be given leave to amend his complaint to include this particular claim.

### III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the plaintiff's motion to amend the complaint be GRANTED, in part, and DENIED, in part, as follows:

1.     While the breach of contract claim set forth in this amended complaint

should be permitted to proceed forward, the punitive damages and attorney's fees demands set forth in the amended complaint's prayer for relief relating to this claim should be stricken.

2.  The plaintiffs' bad faith claim under 42 Pa. C. S. § 8371 should be dismissed without prejudice to allowing leave to further amend this claim if the plaintiffs can articulate a further factual basis for this claim of bad faith given the partial payments made by the defendant under the policy.

3.  The plaintiffs should be given leave to amend this complaint to include a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-9.2 (hereafter "UTPCPL") relating to the cancellation of this homeowner insurance policy.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of September, 2014.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge