**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD STEPHENS and** | : | **Civil No. 1:14-CV-160** |
| **BONNIE WILSON,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **STATE FARM FIRE AND** | : | |
| **CASUALTY COMPANY,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

### I.     Statement of Facts and of The Case

This case involves a dispute relating to a homeowners' insurance policy, and began its life as a *pro se* action filed in state court.  The initial *pro se* complaint alleged that the plaintiffs, Gerald Stephens and Bonnie Wilson, purchased a homeowners insurance policy for their property located at 1184 Julianne Drive, Hummelstown, Pennsylvania from State Farm, and had fully paid the premiums under this insurance policy at the time of the losses which they alleged took place in 2012. (Doc. 1-1, ¶1.)

The plaintiffs are now represented by counsel and have filed an amended complaint which contains three claims.  First, the amended complaint re-states and

re-alleges the plaintiffs' breach of insurance contract claim, alleging that State Farm has failed to properly pay all benefits that are due and owing to the plaintiffs on this homeowner insurance policy.   Count II of the proposed amended complaint then brings a statutory bad faith claim relating to the adjustment of the plaintiffs' covered losses under this insurance policy.   Finally, the amended complaint sets forth a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-9.2 (hereafter "UTPCPL").   This UTPCPL claim is factually distinct from the claims relating to State Farm's alleged failure to pay under its policy with the plaintiffs and relates to the cancellation of this homeowner insurance policy. According to the well-pleaded facts in the complaint, plaintiff Stephens, a quadriplegic, notified State Farm, through its agent, that he would have to leave his residence for a period of time for medical treatment and intended to rent the home while he received care for his disabling condition.   Stephens alleges that he was assured by State Farm's agent that his insurance would remain unaffected by his departure while he sought medical care.   Despite these affirmative assurances, at the time he submitted claims on the policy, Stephen alleges that State Farm then deceptively and wrongfully relied upon his departure from the residence to cancel his insurance, in violation of UTPCPL.   (Doc. 26.)

This case now comes before us for resolution of a discovery dispute. In connection with their bad faith claims, the plaintiffs have propounded a series of discovery demands which have been opposed by the defendant. These discovery demands fall into three broad categories. First, the plaintiffs have demanded access to the defendant's claims manuals, guidelines and instructions materials relating to insurance claims like those made by the plaintiffs. The plaintiffs seek these materials for a four year period, spanning from 2009 through 2014. (Plaintiffs' Requests No. 5,6,7,9 and 10.) In addition, the plaintiffs request access to performance reviews and performance incentive review programs for all of the defendants' employees who played a role in insurance company decisions in this case from 2009 to the present. (Plaintiffs' Request No. 14 and 15.) Finally, the plaintiffs demand that the defendant compile information relating to other insurance lawsuits brought against the defendant involving theft, vandalism and water damages claims, as well as all lawsuits or complaints regarding the conduct of this particular claims adjuster, for periods ranging between four and five years. (Plaintiffs' Requests Nos. 16-19.)

The plaintiffs have filed a motion for compel production of these materials. (Doc. 30.) This motion is fully briefed by the parties, (Docs. 31 and 32.), and is, therefore, ripe for resolution. For the reasons set forth below, the motion will be granted, in part, and denied, in part.

3

## II.   Discussion

### A.   Standard of Review

Several basic guiding principles inform our resolution of the instant discovery dispute.  At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> (1) In General.  On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26 of the Federal Rules of Civil Procedure, which now provides that:

> (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P., Rule 26(b)(1).

4

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999)

(holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138,  2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles.  Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense."  Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues.  Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms:  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information.  <u>Morrison v. Philadelphia Housing Auth.</u>, 203 F.R.D. 195, 196 (E.D.Pa. 2001).  Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as

defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the

potential harm occasioned by discovery would outweigh the ordinary presumption in

favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573

(D.Kan. 2009).

Furthermore, to the extent that litigants seek personnel files in discovery, it is

well-settled that courts have long recognized that:

> Although personnel files are discoverable, they contain confidential
> information and discovery of them should be limited. See, e.g., Reagan-
> Touhy v. Walgreen Co., 526 F.3d 641, 648 (10th Cir.2008) ("Personnel
> files often contain sensitive personal information ... and it is not
> unreasonable to be cautious about ordering their entire contents
> disclosed willy-nilly....   This is not to say personnel files are
> categorically out-of-bounds."); Miles v. Boeing Co., 154 F.R.D. 112,
> 115 (E.D.Pa.1994) ("[P]ersonnel files are confidential and discovery
> should be limited.").   The court must weigh the right to relevant
> discovery against the privacy interest of non-parties.   The court finds
> that Plaintiff is not entitled to the entire personnel records of all the
> individuals without a more particularized showing of relevance.

Harris v. Harley-Davidson Motor Co. Operations, Inc, No. 09-1449, 2010 WL

4683776, *5 (M.D.Pa Nov. 10, 2010).   Miles v. Boeing Co., 154 F.R.D. 112, 115

(E.D. Pa. 1994)("personnel files are confidential and discovery should be limited.").

Finally, one other immutable rule defines the court's discretion when ruling on

motions to compel discovery.   It is clear that the court cannot compel the production

of things that do not exist.   Nor can the court compel the creation of evidence by

7

parties who attest that they do not possess the materials sought by an adversary in litigation.  See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D.Pa. April 9, 2009).

With these legal guideposts in mind we turn to a consideration of Stephens' various discovery requests.

### B.      Claims Manuals and Instructions

At the outset, the plaintiffs seeks discovery of defendant's claims manuals, guidelines and instructions materials relating to insurance claims like those made by the plaintiffs.  The plaintiffs seek these materials for a four year period, spanning from 2009 through 2014.  (Plaintiffs' Requests No. 5,6,7,9 and 10.)  With respect to this request, "it is well-settled that manuals and other training materials are relevant in bad faith insurance litigation where they contain instructions concerning procedures used by employees in processing claims.  See Shellenberger, 1996 WL 92092, at *2 (copies of definition section in insurance company's manuals relevant to bad faith insurance litigation if they 'are related to the facts of the case at issue.').  Only those portions 'relevant to processing the claim in question' are discoverable,

as they may show inter alia that agents of an insurance company recklessly disregarded standard interpretations of a particular contractual provision in denying coverage or deliberatively omitted certain investigatory steps.  See, e.g., Robertson, 1999 WL 179754, at *6 (requiring production of information contained in procedure manuals setting forth insurance company practices for handling claims for underinsured motorist benefits); Kaufman v. Nationwide Mutual Ins. Co., 1997 WL 703175, at *2 (E.D.Pa.1998) (requiring insurance company to produce information contained in manuals and newsletters to the extent that information concerns procedures used by employees who directly handled plaintiff's claims)." McCrink v. Peoples Benefit Life Ins. Co., No. CIV.A.2:04CV01068LDD, 2004 WL 2743420, at *8 (E.D. Pa. Nov. 29, 2004).

Indeed, we note that this court has frequently granted such requests for discovery in the past, reasoning that agency claims processing policies, and non-compliance with those policies, may be relevant to a bad faith claim like the claim made by the plaintiffs in this case.  See e.g., Keefer v. Erie Ins. Exch., No. 1:13 CV 1938, 2014 WL 901123, at *4 (M.D. Pa. Mar. 7, 2014); Consugar v. Nationwide Ins. Co. of Am., No. 3:10CV2084, 2011 WL 2360208, at *6 (M.D. Pa. June 9, 2011); Blaylock v. Allstate Ins. Co., No. CIV. 1:CV 06 1456, 2007 WL 2253500, at *4 (M.D. Pa. Aug. 3, 2007).  We believe, however, that the defendant is

entitled to have some topical and temporal limitations set on this disclosure, narrowing its scope somewhat. Therefore, we will direct the disclosure of those portions of the claims manuals, guidelines and instructions materials relating to insurance claims like those made by the plaintiffs and will refrain from embracing the four to five year period of disclosure demanded by the plaintiffs. Instead, the defendant is instructed to provide the pertinent policy provisions for the years at issue in this lawsuit, 2012 and 2013.

### C.    Personnel Files and Incentive Programs

In addition, the plaintiffs request access to performance reviews and performance incentive review programs for all of the defendant's employees who played a role in insurance company decisions in this case from 2009 to the present. (Plaintiffs' Requests No. 14 and 15.) In considering this request, we begin with the proposition that a " request for personnel information implicates the strong public policy against disclosure of such materials. See, e.g., Adams v. Allstate Ins. Co., 189 F.R.D. 331, 333 (E.D.Pa.1999) (finding requests for personnel files of employees who worked on plaintiff's claim 'overbroad, and seek[ing] information that is unnecessarily invasive'); Stabilus v. Haynesworth, Baldwin, Johnson and Greaves, 144 F.R.D. 258, 266 (E.D.Pa.1992) ('Defendant may not conduct general discovery into areas unrelated to its claims such as employee performance evaluations.'); see

also Carlucci v. Maryland Casualty Co., 2000 WL 298925, at *2 (E.D.Pa. Mar.14, 2000) (referring to the 'heightened relevancy standard when requesting the performance evaluations'); Cantor v. Equitable Life Assur. Soc'y of the United States, 1998 WL 306208, at *3 (E.D.Pa. June 9, 1998); Kaufman v. Nationwide Mut. Ins. Co., 1997 WL 703175, at *1 (E.D.Pa.1997); Closterman v. Liberty Mut. Ins. Co., 1995 WL 472105, at *2 (E.D.Pa. Aug.9, 1995).   Plaintiff will thus be held to a heightened standard in the context of these requests." Santer v. Teachers Ins. & Annuity Ass'n, No. CIV.A. 06-CV-1863, 2008 WL 755774, at *6 (E.D. Pa. Mar. 18, 2008).

Judged by these standards, we find that the instant requests are far too sweeping in their scope in terms of both personnel covered, files sought, and duration of the demanded disclosure.   Therefore, we will deny these requests, with one exception.   The conduct of the adjuster in this case is squarely at issue in this litigation.   To the extent that the personnel files of the adjuster contain disciplinary findings or other material relevant to other claims of bad faith conduct by that adjuster, these materials should be provided to the court by the defendant for our *in camera* inspection to determine whether they are relevant to the issues in this litigation.   If a review of the claims adjuster's personnel file reveals no such information, the defendant shall certify that no such material exists.

### D.    Other lawsuits

Finally, the plaintiffs demand that the defendant compile information relating to other insurance lawsuits involving theft, vandalism and water damages claims, as well as all lawsuits or complaints regarding the conduct of this particular claims adjuster, for periods ranging between four and five years.  (Plaintiffs' Requests Nos. 16-19.)

This request, in our view, requires a balancing of two competing principles. First, it is clear that in some instances examples of similar, wrongful conduct in the processing other insurance claims may permit an inference that there is a pattern or practice of misconduct on a defendant's part.  However, it is equally clear that dissimilar conduct involving disparate claims would not be relevant or admissible in insurance bad faith litigation.  See generally, State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003)(discussing other acts evidence in the context of bad faith insurance claims).  Because the relevance and admissibility of this proof often turns on the degree of similarity between the other cases and the instant lawsuit, courts have frequently rejected sweeping demands for wholesale disclosure of other litigation over the span of many years, like the discovery demands made here. See e.g., Keefer v. Erie Ins. Exch., No. 1:13 CV 1938, 2014 WL 901123, at *6 (M.D. Pa. Mar. 7, 2014); Adams v. Allstate Ins. Co., 189 F.R.D. 331, 333 (E.D. Pa. 1999).

Judged by these standards, we conclude that the plaintiffs' requests for wide-ranging disclosure of all other lawsuits involving Allstate over four to five year periods should be denied.  We find, however, that the request for information pertaining to the claims adjuster in this particular case may have greater relevance to the issues in this lawsuit.  Therefore, we will deny these requests, with one exception. Since the conduct of the adjuster in this case is squarely at issue in this lawsuit, and prior lawsuits or complaints alleging bad faith by this particular claims adjuster in the two years preceding this incident, from 2010 through 2012, may be relevant to this action, to the extent that this information exists, these materials should be provided to the court by the defendant for our *in camera* inspection to determine whether the information is relevant to the issues in this litigation.  If a review reveals no such information, the defendant shall certify that no such material exists.

## III.   Order

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiffs' Motion to Compel is GRANTED , in part, and DENIED, in part, as follows:

1.     With respect to Plaintiffs' Requests Nos. 5,6,7,9 and 10, which seek

claims manuals, guidelines and instructions materials relating to

insurance claims like those made by the plaintiffs, the defendant is

13

ORDERED to disclose those portions of the claims manuals, guidelines and instructions materials relating to insurance claims like those made by the plaintiffs for the years at issue in this lawsuit, 2012 and 2013.

2.  With respect to the plaintiffs' demand that the defendant compile information relating to also insurance lawsuits involving theft, vandalism and water damages claims, as well as all lawsuits or complaints regarding the conduct of this particular claims adjuster, for periods ranging between four and five years, (Plaintiffs' Requests Nos. 16-19.), and the plaintiffs' request for access to performance reviews and performance incentive review programs for all of the defendant's employees who played a role in insurance company decisions in this case from 2009 to the present, (Plaintiffs' Requests No. 14 and 15.), these requests are DENIED, with one exception. Since the conduct of the adjuster in this case is squarely at issue in this case, to the extent that the personnel files of the adjuster may contain disciplinary findings or other material relevant to claims of bad faith conduct by that adjuster, or prior lawsuits or complaints may allege bad faith by this particular claims adjuster in the years preceding this incident, from 2010 through 2012, these files and records may be relevant to this action. Therefore,

14

to the extent that this information exists, these materials should be provided to the court by the defendant for our *in camera* inspection to determine whether they are relevant to the issues in this litigation.  If a review reveals no such information, the defendant shall certify that no such material exists.

So ordered this 13th day of April, 2015.



**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge